# MEMO ENDORSED

*Karas, J*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

GREATER HURON DEVELOPMENT
CORPORATION AND THE INTERMEDIARY
RELENDING PROGRAM,

              Plaintiff,

      -against-

RIDGEFIELD FARMS, LLC, ROY LEVY,
RICHARD GREENFIELD and PHIL FRIEND,

              Defendants.

------------------------------------------------------------------ x

```
┌─────────────────────────────────┐
│ USDS SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #: _____          │
│ DATE FILED: _____     │
└─────────────────────────────────┘
```

ECF CASE

**STIPULATION OF
SETTLEMENT AND ORDER**

Index No. 06 Civ. 13766 (~~CM~~) *(KMK)*
(LMS)

WHEREAS, the plaintiff commenced the above-captioned action against the defendants; and

WHEREAS, the defendants have asserted various defenses and counterclaims against the plaintiffs; and

WHEREAS, plaintiff and defendants believe it to be in their best interest to settle their differences on the terms set forth herein; and

WHEREAS, each party is represented by counsel and fully understands the terms of the settlement and I voluntarily entering into this settlement.

NOW, THEREFORE, it is stipulated and agreed as follows:

1.    The parties hereby acknowledge that the promissory note, personal guarantee, and security agreement previously executed between the parties are hereby reinstated, are in full force and effect and are enforceable in accordance with the terms and provisions contained therein. Copies of the notes, personal guarantees, and security agreement are annexed as **Exhibit A.**

2.    On or before August 10, 2007, simultaneously with the execution of this stipulation by the parties, the defendants shall pay the plaintiff the sum of One Hundred Thousand and 00/100 ($100,000.00) Dollars by certified or bank check which shall be allocated as follows:

| | |
|---|---|
| $7,371.77 | Past due interest |
| $325.00 | Late charges |
| $92,303.23 | Prepayment of principal |

2967/07/323710 V2 8/1/07

3.    The defendants shall immediately commence making monthly payments due under the note and shall hereafter comply with all obligations under the note, guarantees and security agreement.   Without limitation, the monthly payment due under the note is One Thousand Three Hundred Ninety-Two and 04/100 ($1,392.04) Dollars.   The next monthly payment, which is due on or before August 10, 2007 shall be made simultaneously with the execution of the Stipulation.   The principal balance of One Hundred Ten Thousand Seven Hundred Twelve and 82/100 ($110,712.82) Dollars shall be due and shall be paid on March 10, 2009 in accordance with the amortization schedule attached as **Exhibit B**.  There is no prepayment penalty.

4.    On or before August 10, 2007, the defendants shall pay the plaintiff the sum of Nine Thousand Nine Hundred Fifty-One and 00/100 ($9,951.00) Dollars by certified or bank check as reimbursement for legal fees incurred by plaintiff in this action.

5.    Simultaneously with the execution of this stipulation by the parties, the plaintiff and defendants shall execute general releases in the form annexed hereto as **Exhibit C**.

6.    Simultaneously, with the execution of this stipulation, the defendants shall execute and deliver affidavits of Confessions of Judgment securing payment of One Hundred Thirty-Six Thousand Five Hundred Forty-Nine and 34/100 ($136,549.34) Dollars in the form attached hereto as **Exhibit D**, to secure the defendants' payment of all sums due under the note which will be held in escrow by Bartels & Feureien, LLP on behalf of the plaintiff.  Upon default with respect to any payment due under the note, which default continues for seven (7) days after receipt of written note by counsel for plaintiff to counsel for defendants, plaintiff's attorneys shall have the right to immediately file Confessions of Judgment with the Court, without further notice to any defendant and the Judgment shall be enforceable against each defendant, jointly and severally, for the full unpaid amount thereof plus interest from the date of default.   The seven (7) day cure period set forth above shall only be applicable to two (2) separate defaults. Thereafter, there shall be no cure period.  The defendants further agree to reimburse plaintiff for any attorney' fees and expenses which are incurred to enforce the judgment and collect all sums due thereunder.

7.    In the event the defendants complete their obligations under the notes, without a default, plaintiff's attorneys shall return the affidavits of Confession of Judgment to the defendants' attorney and shall note that the Confession of Judgment has not been filed.

8.    This Agreement may be signed in counterparts.

Dated:    _____ August 13, 2007

**Greater Huron Development Corp.**

By: _____
James Borszich, Executive Director and
Corporate Secretary

Dated:    _____ August 10, 2007

**Ridgefield Farms, LLC**

By: _____
Philip Friend, President

Dated:    _____ August 10, 2007

By: _____
Philip Friend

Dated:    _____ August 10, 2007

By: _____
Roy Levy

Dated:    _____ August 10, 2007

By: _____
Richard Greenfield

**The Clerk of the Court is directed to terminate all claims and counterclaims between and among the above-listed parties. The Clerk shall terminate Greater Huron Development Corporation and the Intermediary Relending Program as parties to the case.**

**The Clerk shall retain open only the third-party action brought by Third-Party Plaintiffs Ridgefield Farms, LLC, Roy Levy, Richard Greenfield, and Phil Friend against Third-Party Defendant Ridgefield Farms of South Dakota, LLC.**

**SO ORDERED.**

**KENNETH M. KARAS**
**United States District Judge**

Dated: September 11, 2007

-3-

| | and Intermediary Relending Program | Date | March 10, 2004 |
| 25 Prospect Street | 375 Dakota Avenue South, Suite 102 | Maturity Date | |
| Ridgefield, CT 06877 | Huron, South Dakota 57350 | Loan Amount | $250,000.00 |
| | | Renewal Of | |
| **BORROWER'S NAME AND ADDRESS** | Lender's Name and Address | | |

For value received, I promise to pay you, or your order, at your address listed above the PRINCIPAL sum of
Two hundred and no / 100 - - - - - - - - - - - - - - - - - - - - - Dollars $250,000.00

X    Single Advance:    I will receive all of this principal sum on 3/10/04.    No additional advances are contemplated under this note.

☐    Multiple Advance:    The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____ I will receive the amount of $ _____ and future advances are contemplated.

Conditions:    The conditions for future advances are _____
_____

    X    Closed End Credit: You and I agree that I may borrow up to the maximum only one time (and subject to all other INTEREST: I agree to pay interest on the outstanding principal balance from _____ March 10, 2004
At the rate of    3    %    per year until _____ maturity

☐    Variable Rate: This rate may then change as stated below.
    ☐    Index Rate: The future rate will be _____ the following index rate: _____
_____
_____

    ☐    No Index: The future rate will not be subject to any internal or external index. It will be entirely in your control.
    ☐    Frequency and Timing: The rate on this note may change as often as _____
        A change in the interest rate will take effect _____
    ☐    Limitations:   During the term of this loan, the applicable annual interest rate will not be more than
        _____ %    or less than _____ %.
    Effect of Variable Rate: A change in the interest rate will have the following effect on the payments:
    ☐    The amount of each scheduled payment will change.    ☐    The amount of the final payment will change.

ACCRUAL METHOD: Interest will be calculated on a _____ 365 / 360 _____ basis.
POST MATURITY RATE: I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
    ☐    on the same fixed or variable rate basis in effect before maturity (as indicated below).
    ☐    at a rate equal to _____
X    Late Charge: If a payment is more _____ 10 calendar _____ days after it is due, I agree to pay a late charge of $25.00

X    ADDITIONAL CHARGES: In addition to interest, I agree to pay the following charges which    ☐    are
X    are not    included in the principal amount above: _____ $5,000.00 origination fees

PAYMENTS: I agree to pay this note as follows:
☐    Interest: I agree to pay accrued interest _____
☐    Principal: I agree to pay the principal _____
X    Installments: I agree to pay this note in _____ 60 _____ payments. The first payment will be in the amount of
$ _____ 1,382.04 _____ and will be due _____ April 10, 2004 _____ . A payment of $ _____ 1,382.04
will be due _____ monthly _____ thereafter. The final payment of the entire unpaid balance of principal and interest will be due _____ March 10, 2009
ADDITIONAL TERMS:

PURPOSE: The purpose of this loan is:
_____ Business Loan _____

I AGREE TO THE TERMS OF THIS NOTE
(INCLUDING THOSE ON PAGE 2) I have received a copy on today's date

Signature for Lender

Shawn Lyons, Executive Director and
Corporate Secretary

Phil Friend
Ridgefield Farms, LLC

effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce the accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** If I receive the principal in more than one advance, each advance will start to bear interest only when I receive the advance. The interest rate in effect in this note at any one time will apply to the entire principal advanced at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index rate will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year". If no accrual method is stated, then any accrual method you may in any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENT BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other non-deposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owed by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right to set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument by the "Default" and "Remedies" paragraphs herein.

property interest, I require: (1) I fail to pay, or keep any promise on any note or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I dam and declare I am incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or incomplete at the time it was provided; (7) I do or fail to do something which causes you to believe that you have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such change; (10) I fail to plant, cultivate and harvest crops in due season if I am a producer of crops; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies, you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEYS' FEES:** I agree to pay all costs of collection, replevin or any other similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior approval.

**CREDIT INFORMATION:** I agree and authorize you to obtain credit information about me from time to time (for example, by requesting a credit report) and to report to others your credit experience with me (such as a credit reporting agency). I agree to provide you, upon request, any financial statement or information you deem necessary. I warrant that the financial statements and information I provide you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| Date of Transaction | Principal Advance | Borrowers Initials (not required) | Principal Payments | Principal Balance | Interest Rate | Interest Payments | Interest Paid Through |
|---|---|---|---|---|---|---|---|
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |

Huron _____   SD _____
(City)                (State)

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce GREATER HURON DEVELOPMENT CORPORATION, 375 DAKOTA AVENUE SOUTH, STE. 102, HURON, SD 57350 (herein, with its participants, successors and assigns, called "Lender", at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of _Ridgefield Farms, LLC_

_____ .ein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guaranties to the Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

A. If this ☒ is checked, the Undersigned guaranties to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following: _Promissory Note_ _dated March 10, 2004_ _____ and any extensions, renewals or replacements thereof (hereinafter referred to as the "Indebtedness").

B. If this ☐ is checked, the Undersigned guaranties to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness"). Without limitation, this guaranty includes the following described debt(s): _____

The term, "Indebtedness" as used in this guaranty shall not include any obligations entered into between Borrower and Lender after the date hereof (including any extensions, renewals, or replacements of such obligations) for which Borrower meets the Lender's standard of creditworthiness based on Borrower's own assets and income without the addition of a guaranty or for which a guaranty is required but Borrower chooses someone other than the joint Undersigned to guaranty the obligation.

The Undersigned further acknowledges and agrees with Lender that:

1. No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except full payment and discharge of all Indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or release the liability of the Undersigned hereunder.

2. This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as to Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions and refinancings thereof.

The Undersigned represents and warrants to the Lender that the Undersigned has a direct and substantial economic interest in Borrower and expects to derive substantial benefits therefrom and from any loans and financial accommodations resulting in the creation of Indebtedness guaranteed hereby, and that this guaranty is given for a corporate purpose. The Undersigned agrees to rely exclusively on the right to revoke this guaranty prospectively as to future transactions, by written notice actually received by Lender if at any time, in the opinion of the directors or officers of the Undersigned, the corporate benefits then being ...ved by the Undersigned in connection with this guaranty are not sufficient to warrant the continuance of this guaranty as to ...e Indebtedness. Accordingly, so long as this guaranty is not revoked prospectively in accordance with this guaranty, the Lender may rely conclusively on a continuing warranty, hereby made, that the Undersigned continues to be benefited by this guaranty and the Lender shall have no duty to inquire into or confirm the receipt of any such benefits, and this guaranty shall be effective and enforceable by the Lender without regard to the receipt, nature or value of any such benefits.

3. If the Undersigned shall be dissolved or shall be or become insolvent (however defined) or revoke this guaranty, then the Lender shall have the right to declare immediately due and payable, and the Undersigned will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured. If the Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the United States Bankruptcy Code, the full amount of all Indebtedness, whether due and payable or unmatured, shall be immediately due and payable without demand or notice thereof.

4. The liability of the Undersigned hereunder shall be limited to a principal amount of $ _250,000.00_ _____ (If unlimited or if no amount is stated, the Undersigned shall be liable for all Indebtedness, without any limitation as to amount), plus accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the Undersigned hereunder. The Lender may apply any sums received by or available to the Lender on account of the Indebtedness from Borrower or any other person (except the Undersigned), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. If the liability of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any payment made by the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if accompanied by a written transmittal document, received by the Lender, advising the Lender that such payment is made under this guaranty for such purpose.

5. The Undersigned will pay or reimburse the Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by the Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings.

This guaranty includes the additional provisions on page 2 hereof, all of which are made a part hereof.

This guaranty is ☐ unsecured; ☒ secured by a mortgage or security agreement dated _March 10, 2004_ _____ ☐ secured by _____

IN WITNESS WHEREOF, this guaranty has been duly executed by the Undersigned the day and year first above written.

By _Philip Friend_   _Pres._____ (Title)

By _____

KEN'S SYSTEMS, INC., ST. CLOUD, MN 56301 (1-800-257-2341) FORM M-250  4/2/01  ( For Noncorporate Guarantor use M-242)   "Undersigned" used refers to all entities who sign this guaranty, individually and jointly.   (page 1 of 2)

6. Whether or not any existing relationship between the Undersigned and Borrower has been changed or ended and whether or not this guaranty has been revoked, the Lender may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Undersigned and without any notice to the Undersigned. The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which the Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned): (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all Indebtedness; (ii) any one or more extensions or renewals of Indebtedness (whether or not for longer than the original period) or any modification of the interest rates, maturities or other contractual terms applicable to any Indebtedness; (iii) any waiver adjustment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of Indebtedness, or any failure to institute proceedings, file a claim, give any required notices or otherwise protect any Indebtedness; (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower or any other guarantor or other person liable in respect of any Indebtedness; (v) any discharge of any evidence of Indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor; (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security; or any release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security; (vii) any foreclosure or enforcement of any collateral security; (viii) any transfer of any Indebtedness or any evidence thereof; (ix) any order of application of any payments or credits upon Indebtedness; (x) any election by the Lender under §1111(b)(2) of the United States Bankruptcy Code.

7. The Undersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against the Lender any defense of waiver, release, estoppel, statute of limitations, res judicata, statute of frauds, fraud, forgery, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against the Lender to Borrower or any such other person, whether or not on account of a related transaction. The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The Undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though Borrower's obligations had not been discharged.

8. The Undersigned further agree(s) that Undersigned shall be and remain obligated to pay Indebtedness even though any other person obligated to pay Indebtedness, including Borrower, has such obligation discharged in bankruptcy or otherwise discharged by law. 'Indebtedness' shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not accrue to Indebtedness due to Borrower's discharge, and Undersigned shall remain obligated to pay such amounts as fully as if Borrower's obligations had not been discharged.

9. If any payment applied by the Lender to Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of Borrower or any other obligor), the Indebtedness to which such payment was applied shall for the purposes of this guaranty be deemed to have continued in existence, notwithstanding such application, and this guaranty shall be enforceable as to such Indebtedness as fully as if such application had never been made.

10. The Undersigned waive(s) any claim, remedy or other right which the Undersigned may now have or hereafter acquire against Borrower or any other person obligated to pay Indebtedness arising out of the creation or performance of the Undersigned's obligation under this guaranty, including, without limitation, any right of subrogation, contribution, reimbursement, indemnification, exoneration or any right to participate in any claim or remedy the Undersigned may have against the Borrower, collateral, or other party obligated for Borrower's debt, whether or not such claim, remedy, or right arises in equity, or under contract, statute or common law.

11. The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing Indebtedness. The Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty.

12. The liability of the Undersigned under this guaranty is in addition to and shall be cumulative with all other liabilities of the Undersigned to the Lender as guarantor or otherwise, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

13. The Undersigned represents and warrants to the Lender that (I) the Undersigned is a corporation duly organized and existing in good standing and has full power and authority to make and deliver this guaranty; (ii) the execution, delivery and performance of this guaranty by the Undersigned have been duly authorized by all necessary action of its directors and shareholders and do not and will not violate the provisions of, or constitute a default under, any presently applicable law or its articles of incorporation or by-laws or any agreement presently binding on it; (III) this guaranty has been duly executed and delivered by the authorized officers of the Undersigned and constitutes its lawful, binding and legally enforceable obligation (subject to the United States Bankruptcy Code and other similar laws generally affecting the enforcement of creditors' rights); and (iv) the authorization, execution, delivery and performance of this guaranty do not require notification to, registration with, or consent or approval by, any federal, state or local regulatory body or administrative agency.

14. This guaranty shall be effective upon delivery to the Lender, without further act, condition or acceptance by the Lender, shall be binding upon the Undersigned and the successors and assigns of the Undersigned and that inure to the benefit of the Lender and its participants, successors and assigns. Any invalidity or unenforceability of any provision or application of this guaranty shall not affect other lawful provisions and application hereof, and to this end the provisions of this guaranty are declared to be severable. Except as allowed by the terms herein, this guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Undersigned and the Lender. This guaranty shall be governed by the laws of the State in which it is executed. The Undersigned waives notice of the Lender's acceptance hereof.

# GUARANTY

Huron                              SD
(City)                             (State)

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce **Greater Huron Development Corporation**
herein, with its participants, successors and assigns, called "Lender", at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of **Ridgefield Farms, LLC**

(herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

A. If this ☒ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following: __Promissory Note__ __dated March 10, 2004__ and any extensions, renewals or replacements thereof (hereinafter referred to as the "Indebtedness").

B. If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness"). Without limitation, this guaranty includes the following described debt(s): _____

The term "Indebtedness" as used in this guaranty shall not include any obligations entered into between Borrower and Lender after the date hereof (including any extensions, renewals or replacements of such obligations) for which Borrower meets the Lender's standard of creditworthiness based on Borrower's own assets and income without the addition of a guaranty, or for which a guaranty is required but Borrower chooses someone other than the joint Undersigned to guaranty the obligation.

The Undersigned further acknowledges and agrees with Lender that:

**1.** No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except full payment and discharge of all Indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or release the liability of the Undersigned hereunder.

**2.** This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as to Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions and refinancings thereof. If there be more than one Undersigned, such revocation shall be effective only as to the one so revoking. The death or incompetence of the Undersigned shall not revoke this guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the incompetent and only prospectively, as to future transactions, as herein set forth.

**3.** If the Undersigned shall be dissolved, shall die, or shall be or become insolvent (however defined) or revoke this guaranty, then the Lender shall have the right to declare immediately due and payable, and the Undersigned will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured. If the Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the United States Bankruptcy Code, the full amount of all Indebtedness, whether due and payable or unmatured, shall be immediately due and payable without demand or notice thereof.

**4.** The liability of the Undersigned hereunder shall be limited to a principal amount of $ __250,000.00__ (if unlimited or if no amount is stated, the Undersigned shall be liable for all Indebtedness, without any limitation as to amount), plus accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the Undersigned hereunder. The Lender may apply any sums received by or available to Lender on account of the Indebtedness from Borrower or any other person (except the Undersigned), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. If the liability of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any payment made by the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if accompanied by a written transmittal document, received by the Lender, advising the Lender that such payment is made under this guaranty for such purpose.

**5.** The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings.

This guaranty includes the additional provisions on page 2, all of which are made a part hereof.

This guaranty is ☐ unsecured; ☒ secured by a mortgage or security agreement dated __March 10, 2004__ ;
☐ secured by _____

IN WITNESS WHEREOF, this guaranty has been duly executed by the Undersigned the day and year first above written.

_Roy Levy_
Roy Levy

"Undersigned" shall refer to all persons who sign this guaranty, severally and jointly.

6. Whether or not any existing relationship between the Undersigned and Borrower has been changed or ended and whether or not this guaranty has been revoked, Lender may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Undersigned and without any notice to the Undersigned. The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned): (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all Indebtedness; (ii) any one or more extensions or renewals of Indebtedness (whether or not for longer than the original period) or any modification of the interest rates, maturities or their contractual terms applicable to any Indebtedness; (iii) any waiver, adjustment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of Indebtedness, or any failure to institute proceedings, file a claim, give any required notice or otherwise protect any Indebtedness; (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower or any other guarantor or other person liable in respect of any Indebtedness; (v) any discharge of any evidence of Indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor; (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security; or any release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security; (vii) any foreclosure or enforcement of any collateral security; (viii) any transfer of any Indebtedness or any evidence thereof; (ix) any order of application of any payments or credits upon Indebtedness; (x) any election by the Lender under §1111(b)(2) of the United States Bankruptcy Code.

7. The Undersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against Lender to Borrower or any such other person, whether or not on account of a related transaction. The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The Undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged.

8. The Undersigned further agrees that the Undersigned shall be and remain obligated to pay Indebtedness even though any other person obligated to pay Indebtedness, including Borrower, has such obligation discharged in bankruptcy or otherwise discharged by law. "Indebtedness" shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not otherwise accrue to Indebtedness due to Borrower's discharge, and the Undersigned shall remain obligated to pay such amounts as though Borrower's obligations had not been discharged.

9. If any payment applied by Lender to Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of Borrower or any other obligor), the Indebtedness to which such payment was applied shall for the purposes of this guaranty be deemed to re continued in existence, notwithstanding such application, and this guaranty shall be enforceable as to such Indebtedness as fully as if such application had never been made.

10. The Undersigned waives any claim, remedy or other right which the Undersigned may now have or hereafter acquire against Borrower or any other person obligated to pay Indebtedness arising out of the creation or performance of the Undersigned's obligation under this guaranty, including, without limitation, any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any right to participate in any claim or remedy the Undersigned may have against the Borrower, collateral, or other party obligated for Borrower's debts, whether or not such claim, remedy or right arises in equity, or under contract, statute or common law.

11. The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing Indebtedness. Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty.

12. The liability of the Undersigned under this guaranty is in addition to and shall be cumulative with all other liabilities of the Undersigned to Lender as guarantor or otherwise, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

13. This guaranty shall be enforceable against each person signing this guaranty, even if only one person signs and regardless of any failure of other persons to sign this guaranty. If there be more than one signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each of every particular and shall be fully binding upon and enforceable against either, any or all the Undersigned. This guaranty shall be effective upon delivery to Lender, without further act, condition or acceptance by Lender, shall be binding upon the Undersigned and the heirs, representatives, successors and assigns of the Undersigned and shall inure to the benefit of Lender and its participants, successors and assigns. Any invalidity or unenforceability of any provision or application of this guaranty shall not affect other lawful provisions and application hereof, and to this end the provisions of this guaranty are declared to be severable. Except as authorized by the terms herein, this guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Undersigned and Lender. This guaranty shall be governed by the laws of the State in which it is executed. The Undersigned waives notice of Lender's acceptance hereof.

Huron                    SD
(City)                   (State)

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce
Greater Huron Development Corporation
herein, with its participants, successors and assigns, called "Lender", at its option, at any time or from time to time to
make loans or extend other accommodations to or for the account of __Ridgefield Farms, LLC__

(herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and
unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of
acceleration or otherwise, of the debts, liabilities and obligations described as follows:

A. If this ☑ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, liability or
obligation of Borrower to Lender evidenced by or arising out of the following: __Promissory Note__
__dated March 10, 2004__ _____ and any extensions, renewals
or replacements thereof (hereinafter referred to as the "Indebtedness").

B. If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of each and every
debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe
to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is
or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or
unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter
collectively referred to as the "Indebtedness"). Without limitation, this guaranty includes the following described
debt(s): _____

The term "Indebtedness" as used in this guaranty shall not include any obligations entered into between Borrower and
Lender after the date hereof (including any extensions, renewals or replacements of such obligations) for which
Borrower meets the Lender's standard of creditworthiness based on Borrower's own assets and income without the
addition of a guaranty, or for which a guaranty is required but Borrower chooses someone other than the joint
Undersigned to guaranty the obligation.

The Undersigned further acknowledges and agrees with Lender that:

**1.** No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except full
payment and discharge of all indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or
release the liability of the Undersigned hereunder.

**2.** This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be
in force and binding upon the Undersigned, whether or not all indebtedness is paid in full, until this guaranty is revoked
by written notice actually received by the Lender, and such revocation shall not be effective as to indebtedness
committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions and
refinancings thereof. If there be more than one Undersigned, such revocation shall be effective only as to the one so
revoking. The death or incompetence of the Undersigned shall not revoke this guaranty, except upon actual receipt of
itten notice thereof by Lender and then only as to the decedent or the incompetent and only prospectively, as to future
transactions, as herein set forth.

**3.** If the Undersigned shall be dissolved, shall die, or shall be or become insolvent (however defined) or revoke this
guaranty, then the Lender shall have the right to declare immediately due and payable, and the Undersigned will forthwith
pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured. If the Undersigned
voluntarily commences or there is commenced involuntarily against the Undersigned a case under the United States
Bankruptcy Code, the full amount of all indebtedness, whether due and payable or unmatured, shall be immediately due and
payable without demand or notice thereof.

**4.** The liability of the Undersigned hereunder shall be limited to a principal amount of $ __250,000.00__ (if
unlimited or if no amount is stated, the Undersigned shall be liable for all indebtedness, without any limitation as to
amount), plus accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses referable
thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount,
without affecting or impairing the liability of the Undersigned hereunder. The Lender may apply any sums received by or
available to Lender on account of the Indebtedness from Borrower or any other person (except the Undersigned), from
their properties, out of any collateral security or from any other source to payment of the excess. Such application of
receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. If the liability of the Undersigned is
limited to a stated amount pursuant to this paragraph 4, any payment made by the Undersigned under this guaranty shall
be effective to reduce or discharge such liability only if accompanied by a written transmittal document, received by the
Lender, advising the Lender that such payment is made under this guaranty for such purpose.

**5.** The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and
legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any
litigation or bankruptcy or insolvency proceedings.

This guaranty includes the additional provisions on page 2, all of which are made a part hereof.

This guaranty is ☐ unsecured; ☒ secured by a mortgage or security agreement dated __March 10, 2004__ ;
☐ secured by _____

IN WITNESS WHEREOF, this guaranty has been duly executed by the Undersigned the day and year first above written.

_____
__Richard Greenfield__

*"Undersigned" shall refer to all persons who sign this guaranty, severally and jointly.*

6. Whether or not any existing relationship between the Undersigned and Borrower has been changed or ended and whether or not this guaranty has been revoked, Lender may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Undersigned and without any notice to the Undersigned. The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned): (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all Indebtedness; (ii) any one or more extensions or renewals of Indebtedness (whether or not for longer than the original period) or any modification of the interest rates, maturities or other contractual terms applicable to any Indebtedness; (iii) any waiver, adjustment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of Indebtedness, or any failure to institute proceedings, file a claim, give any required notices or otherwise protect any Indebtedness; (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower or any other guarantor or other person liable in respect of any Indebtedness; (v) any discharge of any evidence of Indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor; (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security; or any release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security; (vii) any foreclosure or enforcement of any collateral security; (viii) any transfer of any Indebtedness or any evidence thereof; (ix) any order or application of any payments or credits upon Indebtedness; (x) any election by the Lender under §1111(b)(2) of the United States Bankruptcy Code.

7. The Undersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against Lender to Borrower or any such other person, whether or not on account of a related transaction. The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged.

8. The Undersigned further agrees that the Undersigned shall be and remain obligated to pay Indebtedness even though any other person obligated to pay Indebtedness, including Borrower, has such obligation discharged in bankruptcy or otherwise discharged by law. "Indebtedness" shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not otherwise accrue to Indebtedness due to Borrower's discharge, and the Undersigned shall remain obligated to pay such amounts as though Borrower's obligations had not been discharged.

9. If any payment applied by Lender to Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of Borrower or any other obligor), the Indebtedness to which such payment was applied shall for the purposes of this guaranty be deemed to have continued in existence, notwithstanding such application, and this guaranty shall be enforceable as to such Indebtedness as fully as if such application had never been made.

10. The Undersigned waives any claim, remedy or other right which the Undersigned may now have or hereafter acquire against Borrower or any other person obligated to pay Indebtedness arising out of the creation or performance of the Undersigned's obligation under this guaranty, including, without limitation, any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any right to participate in any claim or remedy the Undersigned may have against the Borrower, collateral, or other party obligated for Borrower's debts, whether or not such claim, remedy or right arises in equity, or under contract, statute or common law.

11. The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing Indebtedness. Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty.

12. The liability of the Undersigned under this guaranty is in addition to and shall be cumulative with all other liabilities of the Undersigned to Lender as guarantor or otherwise, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

13. This guaranty shall be enforceable against each person signing this guaranty, even if only one person signs and regardless of any failure of other persons to sign this guaranty. If there be more than one signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each of every particular and shall be fully binding upon and enforceable against either, any or all the Undersigned. This guaranty shall be effective upon delivery to Lender, without further act, condition or acceptance by Lender, shall be binding upon the Undersigned and the heirs, representatives, successors and assigns of the Undersigned and shall inure to the benefit of Lender and its participants, successors and assigns. Any invalidity or unenforceability of any provision or application of this guaranty shall not affect other lawful provisions and application hereof, and to this end the provisions of this guaranty are declared to be severable. Except as authorized by the terms herein, this guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Undersigned and Lender. This guaranty shall be governed by the laws of the State in which it is executed. The Undersigned waives notice of Lender's acceptance hereof.

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56301 (1-800-397-2341) FORM M-240  8/29/91 ( For Corporate Guarantor use M-250)

Idgefield Farms, LLC
5 Prospect Street
Idgefield, CT 06877
3-1605737

**Debtor's Name, Address, and SSN or TIN**
("I" means each Debtor who signs.)

Greater Huron Development Corporation
Intermediary Relending Program
375 Dakota Avenue South, Ste. 102
Huron, South Dakota 57350

**Secured Party's Name and Address**
("You" means the Secured Party, its successors and assigns)

m entering into this security agreement with you on:                                          March 10, 2004                                          (Date).

ECURED DEBTS. I agree that this security agreement will secure the payment and performance of the debts, liabilities or obligations described below

at (check one)  ☐ I    X (name)      Ridgefield Farms, LLC

owe(s) to you now or in the

:heck one below):

Specific Debt (s): The debt (s), liability or obligations evidenced by (describe):                         Promissory Note
dated March 10, 2004                                          and all

:tensions, renewals, refinancings, modifications, and replacements of the debt, liability or obligation.

)·        All Debt(s): Except those cases listed in the "LIMITATIONS" paragraph on page 2, each and every debt, liability, obligation of every type and description
(whether such debt, liability, or obligation now exists or is incurred or created in the near future whether it is or may be direct or indirect, due or to
become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several or joint and several)

ecurity Interest. To secure the payment and performance of the above described Secured Debts, liability and obligations, I give you a security interest in all of the
property described below that I now own and that I may own in the future (including, but not limited to, all parts, accessories, repairs, improvements, and
accessions to the property, wherever the property is or may be located, all proceeds and products from the property.

:        Inventory: All inventory which I hold for ultimate sale or lease, or which has been or will be supplied under contracts or service, or which are raw
materials, work in process, or materials used in my business.

:        Equipment:  All equipment including , but not limited to, all machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and
equipment, shop equipment, office and record keeping equipment, and parts and tools.  All equipment described in a list or scheduled which I give to
you will also be included in the secured property, but such a list is not necessary for a valid security interest in my equipment.

)        Farm Products: All farm products including, but not limited to:
·( A )        All poultry and livestock and their young, along with their products, produce and replacements.
( B )        All crops, annual or perennial, and all products of crops; and
( C )        All feed, seed, fertilizer, machines, and other supplies used or produced in farming operations.

(        Accounts, Instruments, Documents, Chattel Paper and Other Rights to Payment:   All rights I have now and that I may have in the future to
the payment of money including, but not limited to:
( A )        Payment for goods and property sold or leased for services rendered, wheter or not I have earned such payment or by performance; and
( B )        Rights to payment out of all present and future debt instruments, chattel paper and loans and obligations receivable.  The above include
any rights and interests (including all liens and security interests) which I may have by law or agreement against any account debtor or obligor of mine.

(        General Intangibles: All general intangibles including, but not limited to, tax refunds, applications for patents, patents, copyrights, trademarks, trade
secrets, good will, trade  names, customer lists, permits and franchises, and the right to use my name.

:        Government Payments and  Programs: All payments, accounts, general intangibles, or other benefits (including, but not limited to, payments in kind,
deficiency payments, letters of  entitlement, warehouse receipts, storage payments, emergency assistance payments, diversion payments, and
conservation reserve payments) in which I now have and in the future have any rights or interest and which arise under or as a result of any preexisting
current or future Federal or state governmental program ( including, but not limited to, all programs administered by the Commodity Credit
Corporation and the ASCS).

I        .  The secured property includes, but is not limited to, the following:

If this agreement covers timber to be cut, minerals (including oil and gas), fixtures, or crops growing or to be grown, the legal description is:

COPY

m s(n)        ☐        Individual        ☐        Corporation
☐        Partnership    X        ....ed Liability Corporation
☐        If checked, file this agreement in the rea..tate records.

**I AGREE TO THE TERMS SET OUT IN BOTH PAGE 1 AND PAGE 2 OF THIS
AGREEMENT.  I have received a copy of this document on today's date.**

:cord Owner, (if not me):

s property will be used for        ☐        personal        X        business
☐        agricultural    ☐        .....ons

Ridgefield Farms, LLC
(Debtor's Name)

By:
Title:   Phil Friend, President

(Secured Party's Name)

:        Shawn Lyons, Executive Director and Corporate Secretary

By:
Title:

GENERALLY - "You" means the Secured Party identified on page 1 of this agreement. "I," "me," and "my" means each person who is this security agreement as Debtor and who agrees to give the property described in this agreement as security for the Secured Debts. All terms and duties under this agreement are joint and several and individual. No modification of this security agreement is effective unless made in writing and signed by you and me. This security agreement remains in effect, even if the note is paid and I owe no other debt to you, until discharged in writing. Time is of the essence in this agreement.

APPLICABLE LAW - I agree that this security agreement will be governed by the law of the state in which you are located. If property described in this agreement is located in another state, this agreement may also, in some circumstances, be governed by the law of the state in which the property is located.

To the extent permitted by law, the terms of this agreement may vary applicable law, if any provision of applicable law may not be varied by agreement, any provision of this agreement that does not comply with that law will not be effective. If any provision of this agreement cannot be enforced according to its terms, this fact will not effect the enforceability of the remainder of this agreement.

OWNERSHIP AND DUTIES TOWARD PROPERTY - I represent that I own all of the property, or to the extent this is a purchase money security interest I will acquire ownership of the property with the proceeds of the loan. I will defend it against any other claim. Your claim to the property is ahead of claims of any other creditor. I agree to do what ever you require to protect your security interest and to keep the claim in the property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records, and accounts about the property and my business in general. I will let you examine these records at any reasonable time. I will prepare any report or accounting you request, which deals with the property. I will keep the property in my possession and will keep it in good repair and use it only for the purpose(s) described in page 1 of this agreement. I will not change this specified use without your express written permission. I represent that I am the original owner of the property and if I am not, that I have provided you with a list of prior owners of the property.

I will keep the property at my address on page 1 of this agreement, unless we agree I may keep it at another location. If the property is to be used in another state, I will give you a list of those states. I will not try to sell the property unless it is inventory or I receive your written permission to do so. If I sell the property I will have the payment made payable to the order of you and me. You may demand immediate payment of the debt(s) if the debtor is not a natural person and without your prior written consent (1) a beneficial interest in the debtor is sold or transferred or (2) there is a change in either the identity or number of members of a partnership or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation.

I will pay all taxes and charges on the property as they become due. You have the right of reasonable access in order to inspect the property. I will immediately inform you of any loss or damage to the property.

LIMITATIONS - This agreement will not secure a debt described in the section entitled "Secured Debts" on page 1:

   1.) If you are to may any disclosure of the existing evidence of this security interest required by law for such debt;

   2.) If this security interest is in my principal dwelling and you fail to provide (to all persons entitled) any notice of right of recission required by law for such other debt;

   3.) To the extent that this security interest is in "household goods" and the other debt to be secured is a "consumer"loan (as those terms are defined in applicable federal regulation governing unfair and deceptive credit practices);

   4.) If this security interest is in margin stock subject to the requirements of 12 C.F.R. Section 207 or 221 and you do not obtain a statement of purpose if required under these regulations with respect to that debt; or

   5.) If this security interest is unenforceable by law with respect to that debt.

PURCHASE MONEY SECURITY INTEREST - For the sole purpose of determining the extent of a purchase money security interest arising under this security agreement: (a) payments on any non-purchase money loan also secured by this agreement will not be deemed to apply to the purchase money loan, and (b) payments on the purchase money loan will be deemed to apply first to the non-purchase money portion of the loan if any, and then to the purchase money obligations in the order in which the items of collateral were acquired of if acquired at the same time, in the order selected by you . No security interest will be terminated by application of this formula. "Purchase money loan" means any loan the proceeds of which, in whole or in part, are used to acquire any collateral securing the loan and all extensions, renewals, consolidations and refinancings of such loan.

AUTHORITY OF SECURED PARTY TO MAKE ADVANCES AND PERFORM FOR DEBTOR - I agree to pay you on demand any sums you advance on my behalf including, but not limited to, expenses incurred in collecting, insuring, conserving, or protecting the property in any inventories, audits, inspections or other examinations by you in respect to the property. If I fail to pay such sums, you may do so for me, adding the amount paid to the other amounts secured by this agreement. All such sums will be due on demand and will bear interest at the highest rate provided in the agreement, note, or other instrument evidencing the Secured Debt(s) and permitted by law at the time of the advance.

If I fail to perform any of my duties under this security agreement, or any mortgage, deed of trust, lien or other security interest, you may without notice to me perform the duties or cause them to be performed. I understand that this authorization includes, but is not limited to, permission to: (1) prepare, file, and sign my name to any necessary reports or accountings; (2) notify any account debtor of your interest in this property and tell the account debtor to make payments to you or someone else you name, rather than me; (3) place on any chattel paper a note indicating your interest in the property; (4) in my name, demand, collect, receive and give a receipt for, compromise, settle and handle any suits or other proceedings involving the collateral; (5) take any action you feel is necessary in order to realize on the collateral, including performing any part of a contract or endorsing in my name; and (6) many an entry on my books and records showing the existence of the security agreement. Your right to perform for me shall not create an obligation to perform will not preclude you from exercising any of your other rights under the law or this security agreement.

INSURANCE - I agree to buy insurance on the property against the risks and

for the amounts that you require and to furnish you continuing proof of insurance coverage. I ... ve the insurance company name you as loss payee on any such polic.... ou may require added security if you agree that insurance proceeds may be used to repair or replace the property. I will buy insurance from a firm licensed to do business in the state where you are located. The firm will be reasonably acceptable to you. The insurance will last until the property is released from this agreement. If I fail to buy or maintain the insurance, (or fail to name you as loss payee) you may purchase it yourself.

WARRANTIES AND REPRESENTATIONS - If this agreement includes accounts, I will not settle any account for less than its full value without your written permission. I will collect all accounts un til you tell me otherwise. I will keep the proceeds form all accounts and any goods which are returned to me or which I take back in trust for you. I will not mix them with any other property of mine. I will deliver them to you at your request. If you ask me to pay you the full price on any returned items or items retaken by myself, I will do so. If this agreement covers inventory, I will not dispose of it except in my ordinary course of business at the fair market value for the property, or at a minimum price established between you and me.

If this agreement covers farm products I will provide you, at your request, a written list of buyers, commission merchants or selling agents to or through whom I may sell my farm products. In addition to those parties named in this list, when I authorize you to notify at your sole discretion any additional parties regarding your security interest in my farm products. I remain subject to all applicable penalties for selling my farm products in violation of my agreement with you and the Food Security Act. In this paragraph the terms of the products, buyers, commission merchants and selling agents have the meanings given to them in the Federal Food Secuurity Act of 1985.

DEFAULT - I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt I owe when I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my abilities exceed my assets or I am unable to pay my debts as they become due; (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you have difficulty collecting the amount that I owe you; (8) I change my name or assume an additional name without first notifying you before making such a change; (9) failure to plant, cultivate, and harvest crops in due season; (10) If any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

REMEDIES - If I am in default on this agreement, you have the following remedies:

   1.) You may demand immediate payment of all that I owe you under any obligation secured by this agreement.

   2.) You may set off any obligation I have to you against any right I have to the payment of money from you.

   3.) You may demand more security or new parties obligated to pay any debt I owe you as a condition of giving up any other remedy.

   4.) You may make use of any remedy you have under state of federal law.

   5.) If I default by failing to pay taxes or other charges, you may pay them (but you are not required to do so) If you do, I will repay to you the amount you paid plus interest at the highest contract rate.

   6.) You may require me to gather the property and make it available to you in a reasonable fashion.

   7.) You may repossess the property and sell it as provided by the law. You may repossess the property so long as the repossession does not involve a breach of the peace or an illegal entry onto my property. You may sell the property as provided by the law. You may apply what you receive from the sale of the property to: your expenses: your reasonable attorney's fees and legal expenses (where not prohibited by law); and debt I owe you. If what you receive from the sale of the property does not satisfy the debts, you may take me to court to recover the difference (where permitted by law) .

I agree that 10 days written notice sent to my address listed on page 1 by first class mail will be reasonable notice to me under the Uniform Commercial Code.

If any items not otherwise subject to this agreement are contained in the property when you take possession, you may hold these items for me at my risk and you will not be liable for taking possession of them.

   8.) In some cases, you may keep the property to satisfy the debt. You may enter upon and take possession of all or any part of my property, so long as you do not breach the peace or illegaly enter onto the property, including lands, plants, buildings, machinery, and equipment as may be necessary to permit you to manufacture, produce, process, store or sell or complete the manufacture, production, processing, storing or sale if any of the property and to use and operate the property for the length of time you feel is necessary to protect your interest, all without payment or compensation to me.

By choosing any one or more of these remedies, you do not waive your right to later use any other remedy. You do not waive a default if you choose not to us any remedy, and by electing not to use any remedy, you do not waive your right to later consider the event as a default and to immediately use any remedies if continues or occurs again.

FILING - A carbon, photographic or other reproduction of this security agreement or the financing statement covering the property described in this agreement may be used as a financing statement where allowed by law. Where permitted by law, you may file a financing statement which does not obtain my signature, covering the property secured by this agreement.

CO-MAKERS - If more than one of us has signed this agreement, we are all obligated equally under the agreement. You may sue any one of us or any of us together if this agreement is violated. You do not have to tell me if any term of the agreement has not been carried out. You may release any security and will still be obligated under this agreement. Waiver by you of any of your rights will not effect my duties under this agreement. Extending this agreement or new obligations under this agreement, will not effect my duty under this agreement.

Exhibit B

Ridgefield Farms - IRP

| | | |
|---|---|---|
| Principal | | 250,000.00 |
| Annual Interest | | 3% |
| Term (years) | | 5 |
| Periods per year | | 12 |
| Start date | | 4/10/2004 |
| Maturity | | 3/10/2009 |
| | | 1,392.04 |
| Monthly payment | | 1,392.04 |
| No. of payments | | 60 |

| Payment # | Payment Date | Payment Amount | Interest | Principal | Remaining Balance | Received |
|---|---|---|---|---|---|---|
| 1 | 4/10/2004 | 1,392.04 | 645.83 | 746.21 | 249,253.79 | 4/13/2004 |
| 2 | 5/10/2004 | 1,392.04 | 623.13 | 768.91 | 248,484.88 | 5/14/2004 |
| 3 | 6/10/2004 | 1,392.04 | 641.92 | 750.12 | 247,734.76 | 5/25/2004 |
| 4 | 7/10/2004 | 1,392.04 | 619.34 | 772.70 | 246,962.06 | 6/4/2004 |
| 5 | 8/10/2004 | 1,392.04 | 637.99 | 754.05 | 246,208.01 | 9/30/2004 |
| 6 | 9/10/2004 | 1,392.04 | 636.04 | 756.00 | 245,452.01 | 11/19/2004 |
| 7 | 10/10/2004 | 1,392.04 | 613.63 | 778.41 | 244,673.60 | 11/19/2004 |
| 8 | 11/10/2004 | 1,392.04 | 632.07 | 759.97 | 243,913.63 | 11/19/2004 |
| 9 | 12/10/2004 | 1,392.04 | 609.78 | 782.26 | 243,131.37 | 12/8/2004 |
| 10 | 1/10/2005 | 1,392.04 | 628.09 | 763.95 | 242,367.42 | 1/18/2005 |
| 11 | 2/10/2005 | 1,392.04 | 625.12 | 765.92 | 241,601.50 | 2/14/2005 |
| 12 | 3/10/2005 | 1,392.04 | 563.74 | 828.30 | 240,773.20 | 3/16/2005 |
| 13 | 4/10/2005 | 1,392.04 | 622.00 | 770.04 | 240,003.16 | 4/13/2005 |
| 14 | 5/10/2005 | 1,392.04 | 600.01 | 792.03 | 239,211.13 | 5/11/2005 |
| 15 | 6/10/2005 | 1,392.04 | 617.96 | 774.08 | 238,437.05 | 6/9/2005 |
| 16 | 7/10/2005 | 1,392.04 | 596.09 | 795.95 | 237,641.10 | 7/11/2005 |
| 17 | 8/10/2005 | 1,392.04 | 613.91 | 778.13 | 236,862.97 | 8/10/2005 |
| 18 | 9/10/2005 | 1,392.04 | 611.90 | 780.14 | 236,082.83 | 9/22/2005 |
| 19 | 10/10/2005 | 1,392.04 | 590.21 | 801.83 | 235,281.00 | 11/17/2005 |
| 20 | 11/10/2005 | 1,392.04 | 607.81 | 784.23 | 234,496.77 | 11/17/2005 |
| 21 | 12/10/2005 | 1,392.04 | 586.24 | 805.80 | 233,690.97 | 12/13/2005 |
| 22 | 1/10/2006 | 1,392.04 | 603.70 | 788.34 | 232,902.63 | 1/11/2006 |
| 23 | 2/10/2006 | 1,392.04 | 601.67 | 790.37 | 232,112.26 | 2/21/20061 |
| 24 | 3/10/2006 | 1,392.04 | 541.60 | 850.44 | 231,261.82 | 4/7/2006 |
| 25 | 4/10/2006 | 1,392.04 | 597.43 | 794.61 | 230,467.21 | 4/26/2006 |
| 26 | 5/10/2006 | 1,392.04 | 576.17 | 815.87 | 229,651.34 | 5/8/2006 |
| 27 | 6/10/2006 | 1,392.04 | 593.27 | 798.77 | 228,852.57 | 6/8/2006 |
| 28 | 7/10/2007 | 1,392.04 | 7,371.77 | 92,303.23 | 136,549.34 | |
| 29 | 8/10/2007 | 1,392.04 | 589.08 | 802.96 | 135,746.38 | |
| 30 | 9/10/2007 | 1,392.04 | 587.01 | 805.03 | 134,941.35 | |
| 31 | 10/10/2007 | 1,392.04 | 566.06 | 825.98 | 134,115.37 | |
| 32 | 11/10/2007 | 1,392.04 | 582.80 | 809.24 | 133,306.13 | |
| 33 | 12/10/2007 | 1,392.04 | 561.97 | 830.07 | 132,476.06 | |
| 34 | 1/10/2008 | 1,392.04 | 578.56 | 813.48 | 131,662.58 | |
| 35 | 2/10/2008 | 1,392.04 | 576.46 | 815.58 | 130,847.00 | |
| 36 | 3/10/2008 | 1,392.04 | 518.77 | 873.27 | 129,973.73 | |
| 37 | 4/10/2008 | 1,392.04 | 572.10 | 819.94 | 129,153.79 | |
| 38 | 5/10/2008 | 1,392.04 | 551.59 | 840.45 | 128,313.34 | |
| 39 | 6/10/2008 | 1,392.04 | 567.81 | 824.23 | 127,489.11 | |
| 40 | 7/10/2008 | 1,392.04 | 547.43 | 844.61 | 126,644.50 | |
| 41 | 8/10/2008 | 1,392.04 | 563.50 | 828.54 | 125,815.96 | |
| 42 | 9/10/2008 | 1,392.04 | 561.36 | 830.68 | 124,985.28 | |
| 43 | 10/10/2008 | 1,392.04 | 541.17 | 850.87 | 124,134.41 | |
| 44 | 11/10/2008 | 1,392.04 | 557.01 | 835.03 | 123,299.38 | |
| 45 | 12/10/2008 | 1,392.04 | 536.96 | 855.08 | 122,444.30 | |
| 46 | 1/10/2009 | 1,392.04 | 552.65 | 839.39 | 121,604.91 | |
| 47 | 2/10/2009 | 1,392.04 | 550.48 | 841.56 | 120,763.35 | |
| 48 | 3/10/2009 | 1,392.04 | 512.93 | 879.11 | 119,884.24 | |
| 49 | 4/10/2009 | 1,392.04 | 546.03 | 846.01 | 119,038.23 | |
| 50 | 5/10/2009 | 1,392.04 | 526.30 | 865.74 | 118,172.49 | |
| 51 | 6/10/2009 | 1,392.04 | 541.61 | 850.43 | 117,322.06 | |

| 52 | 7/10/2009 | 1,392.04 | 522.01 | 870.03 | 116,452.03 |
| 53 | 8/10/2009 | 1,392.04 | 537.17 | 854.87 | 115,597.16 |
| 54 | 9/10/2009 | 1,392.04 | 534.96 | 857.08 | 114,740.08 |
| 55 | 10/10/2009 | 1,392.04 | 515.56 | 876.48 | 113,863.60 |
| 56 | 11/10/2009 | 1,392.04 | 530.48 | 861.56 | 113,002.04 |
| 57 | 12/10/2009 | 1,392.04 | 511.21 | 880.83 | 112,121.21 |
| 58 | 1/10/2010 | 1,392.04 | 525.98 | 866.06 | 111,255.15 |
| 59 | 2/10/2010 | 1,392.04 | 523.74 | 868.30 | 110,386.85 |
| 60 | 3/10/2009 | 110,712.82 | 325.97 | 110,386.85 | 0.00 |

## General Release

*To all to whom these Presents shall come or may Concern, Know that*

**Greater Huron Development Corp.**

A corporation organized under the laws of the State of South Dakota                                        , as RELEASOR,
in consideration of the sum of $1.00 and other valuable and beneficial consideration,

received from

**Ridgefield Farms, LLC, Phil Friend, Roy Levy and Richard Greenfield**

                                                                                                , as RELEASEE,
receipt whereof is hereby acknowledged, releases and discharges

the RELEASEE, RELEASEE'S heirs, executors, administrators, and successors, and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEE, the RELEASOR, RELEASOR'S successors and assigns ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE, except for those obligations contained in the stipulation of settlement executed by the parties on July ___, 2007 and the obligations contained in the documents described therein.

The words "RELEASOR" and "RELEASEE" include all releasors and all releases under this RELEASE.

This RELEASE may not be changed orally.

*In Witness Whereof, the* RELEASOR *has caused this* RELEASE *to be executed by its duly authorized officers and its corporate seal to be hereunto affixed on July 2007*

In presence of:                                    By: James Borszich,          **Executive Director and Corporate Secretary**

## ACKNOWLEDGEMENT

STATE OF South Dakota, COUNTY OF Beadle

    On the    day of                    , 2007, before me, the undersigned, a Notary Public in and for the said State, personally appeared , personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the foregoing General Release ("the instrument") and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the person upon behalf of which the individual acted, executed the instrument.

                                                                NOTARY PUBLIC

## To all to whom these Presents shall come or may Concern, Know That

I, Roy Levy

An individual residing at 99 Suffolk Street #3B, New York, New York 10002    , as RELEASOR, in consideration of the sum of $1.00 and other valuable and beneficial consideration,

received from

**Greater Huron Development Corp.**

    , as RELEASEE,

receipt whereof is hereby acknowledged, releases and discharges

the RELEASEE, RELEASEE'S heirs, executors, administrators, and successors, and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEE, the RELEASOR, RELEASOR'S successors and assigns ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE, except this release shall not apply to any obligations contained in the stipulation of settlement and order in the case known as

The words "RELEASOR" and "RELEASEE" include all releasors and all releases under this RELEASE.

This RELEASE may not be changed orally.

**In Witness Whereof,** the RELEASOR has caused this RELEASE to be executed by its duly authorized officers and its corporate seal to be hereunto affixed on July 3|  2007

_In presence of:_

By: _____
    Roy Levy

## ACKNOWLEDGEMENT

STATE OF _New York_ , COUNTY OF _Bronx_

On the _3rd_ day of _aug_, 2007, before me, the undersigned, a Notary Public in and for the said State, personally appeared _Roy Levy_ , personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the foregoing General Release ("the instrument") and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the person upon behalf of which the individual acted, executed the instrument.

_Vilma R Ramos_
NOTARY PUBLIC

VILMA R. RAMOS
Notary Public, State of New York
No. 01RA4975955
Qualified in Orange County
Commission Expires December 26, 20 10

# To all to whom these Presents shall come or may Concern, Know That

### I, Richard Greenfield

An individual residing at 6 Old Farm Circle, White Plains, New York, 10605                    , as RELEASOR,
in consideration of the sum of $1.00 and other valuable and beneficial consideration,

received from

### Greater Huron Development Corp.

                                                                                      , as RELEASEE,
receipt whereof is hereby acknowledged, releases and discharges

the RELEASEE, RELEASEE'S heirs, executors, administrators, and successors, and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEE, the RELEASOR, RELEASOR'S successors and assigns ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE, except this release shall not apply to any obligations contained in the stipulation of settlement and order in the case known as

The words "RELEASOR" and "RELEASEE" include all releasors and all releases under this RELEASE.

This RELEASE may not be changed orally.

**In Witness Whereof,** *the RELEASOR has caused this RELEASE to be executed by its duly authorized officers and its corporate seal to be hereunto affixed on* July 31 2007

In presence of: _____     By: _____
                                          Richard Greenfield

## ACKNOWLEDGEMENT

STATE OF New York , COUNTY OF Bronx

On the 3rd day of Aug, 2007, before me, the undersigned, a Notary Public in and for the said State, personally appeared Roy Levy , personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the foregoing General Release ("the instrument") and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the person upon behalf of which the individual acted, executed the instrument.

_Vilma R. Ramos_
NOTARY PUBLIC

VILMA R. RAMOS
Notary Public, State of New York
No. 01RA4975955
Qualified in Orange County
Commission Expires December 26, 2010

# To all to whom these Presents shall come or may Concern, Know That

**I, Philip Friend**

An individual residing at 222 Peaceable Street, Ridgefield, Connecticut 06877                    , as RELEASOR, in consideration of the sum of $1.00 and other valuable and beneficial consideration,

received from

**Greater Huron Development Corp.**

                    , as RELEASEE, receipt whereof is hereby acknowledged, releases and discharges

the RELEASEE, RELEASEE'S heirs, executors, administrators, and successors, and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEE, the RELEASOR, RELEASOR'S successors and assigns ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE, except this release shall not apply to any obligations contained in the stipulation of settlement and order in the case known as

The words "RELEASOR" and "RELEASEE" include all releasors and all releases under this RELEASE.

This RELEASE may not be changed orally.

**In Witness Whereof,** *the RELEASOR has caused this RELEASE to be executed by its duly authorized officers and its corporate seal to be hereunto affixed* on July _____ 2007

*In presence of:*

By: _____
    Philip Friend, President

## ACKNOWLEDGEMENT

STATE OF _____, COUNTY OF _____

On the 7 day of August, 2007, before me, the undersigned, a Notary Public in and for the said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the foregoing General Release ("the instrument") and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the person upon behalf of which the individual acted, executed the instrument.

NOTARY PUBLIC

**JESSICA PHILPOTTS**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES NOV. 30, 2009

## General Release

*To all to whom these Presents shall come or may Concern, Know that*

**Ridgefield Farms, LLC**

A limited liability corporation organized under the laws of the State of Connecticut in consideration of the sum of $1.00 and other valuable and beneficial consideration,                               , as RELEASOR,

received from

**Greater Huron Development Corp.**

receipt whereof is hereby acknowledged, releases and discharges                               , as RELEASEE,

the RELEASEE, RELEASEE'S heirs, executors, administrators, and successors, and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEE, the RELEASOR, RELEASOR'S successors and assigns ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE.

The words "RELEASOR" and "RELEASEE" include all releasors and all releases under this RELEASE.

This RELEASE may not be changed orally.

*In Witness Whereof, the RELEASOR has caused this RELEASE to be executed by its duly authorized officers and its corporate seal to be hereunto affixed on July 2007*

*In presence of:*

By:

Philip Friend, President

## ACKNOWLEDGEMENT

STATE OF                            , COUNTY OF

On the    day of  7  August  , 2007, before me, the undersigned, a Notary Public in and for the said State, personally appeared , personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the foregoing General Release ("the instrument") and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the person upon behalf of which the individual acted, executed the instrument.

NOTARY PUBLIC

**JESSICA PHILPOTTS**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES NOV. 30, 2009

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

GREATER HURON DEVELOPMENT
CORPORATION AND THE INTERMEDIARY
RELENDING PROGRAM,

　　　　　　　　Plaintiff,

　　　-against-

RIDGEFIELD FARMS, LLC, ROY LEVY,
RICHARD GREENFIELD and PHIL FRIEND,

　　　　　　　　Defendants.

------------------------------------------------------------------- x

**AFFIDAVIT OF CONFESSION
OF JUDGMENT**

Case No. 06 Civ. 13766 (CM)

STATE OF NEW YORK　　　　　)
　　　　　　　　　　　　　　) ss.:
COUNTY OF WESTCHESTER　　)

　　　RIDGEFIELD FARMS, LLC, PHILIP FRIEND, ROY LEVY AND RICHARD GREENFIELD, being duly sworn, depose and say;

　　　That deponents are the defendants herein.

　　　The defendants hereby confess judgment herein and authorize entry thereof against RIDGEFIELD FARMS, LLC, PHILIP FRIEND, ROY LEVY and RICHARD GREENFIELD, jointly and severally, in the sum of $136,549.34 (One Hundred Ten Thousand Seven Hundred Twelve Dollars and Eighty Two Cents), less any prior payments made pursuant to a Stipulation of Settlement and Order executed by deponents in an action titled <u>Greater Huron Development Corporation and the Intermediary Relending Program v. Ridgefield Farms, LLC, Philip Friend, Roy Levy and Richard Greenfield,</u> (U.S.D.C., S.D.N.Y. Case No. 06 Civ. 13766 (CM) (LMS) (S.D.N.Y. – White Plains Division).

　　　The individual defendants reside at Philip Friend, 222 Peaceable Street, Ridgefield, Connecticut 06877, Roy Levy, 99 Suffolk Street #3B, New York, New York 10002, and Richard Greenfield, 6 Old Farm Circle, White Plains, New York 10605. Ridgefield Farms, LLC has offices at 222 Peaceable Street, Ridgefield, Connecticut 06877.

　　　The defendant authorizes entry of judgment in Westchester County, New York if said residence is not in New York State.

　　　This confession of judgment is for a debt justly due to the plaintiff from the defendants arising from the failure to make a payment or payments due on a promissory note and the settlement of the above captioned matter.

2967/07/323713 V2  8/1/07

-1-

The confession of judgment is not for the purpose of securing plaintiff against a contingent liability.

Ridgefield Farms LLC

By: _____
Philip Friend, President

Sworn to before me on the
7 day of August, 2007

_____
Notary Public

JESSICA PHILPOTTS
NOTARY PUBLIC
MY COMMISSION EXPIRES NOV. 30, 2009

By: _____
Philip Friend

Sworn to before me on the
7 day of August, 2007

_____
Notary Public

By: _____
Roy Levy

Sworn to before me on the
3rd day of Aug, 2007

_____
Notary Public

VILMA R. RAMOS
Notary Public, State of New York
No. 01RA4975955
Qualified in Orange County
Commission Expires December 26, 2010

By: _____
Richard Greenfield

Sworn to before me on the
3rd day of Aug, 2007

_____
Notary Public

VILMA R. RAMOS
Notary Public, State of New York
No. 01RA4975955
Qualified in Orange County
Commission Expires December 26, 2010

2967/07/323713 V2  8/1/07

-2-